## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| QUIRINA SANTIAGO, on behalf of | ) | |
| S.H.S., a minor child, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-07-720-L |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF THE SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>REPORT AND RECOMMENDATION</u>

Ms. Quirina Santiago seeks judicial review of the final decision of the Defendant Commissioner denying childhood disability benefits to her minor son (S.H.S.) under Title XVI of the Social Security Act. The Commissioner has answered and filed the administrative record ("AR"), and both parties have briefed their respective positions. Based on review of the record and issues presented, it is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## I.  <u>Procedural History</u>

Ms. Santiago protectively filed an application for benefits on behalf of S.H.S. on June 4, 2003. AR 55. She alleged that S.H.S. was disabled by attention deficit hyperactivity disorder (ADHD). AR 55. The application was denied initially and on reconsideration. AR 29-30. On March 23, 2006, an Administrative Law Judge (ALJ) held a hearing at which Ms.

Santiago and S.H.S. appeared and testified.  *See*  AR 272-298.  In an August 25, 2006, decision, the ALJ found that S.H.S. is not disabled and denied benefits.  AR 20-27.  The Appeals Council denied review of the ALJ's decision.  AR 5-9.

## II.   Statutory Framework for Determining Childhood Disability

Agency regulations outline a sequential evaluation an ALJ must follow in determining whether a child is "disabled" within the meaning of the Act.  First, the ALJ determines whether the child has engaged in substantial gainful activity since the alleged onset date.  20 C.F.R. § 416.924(b).  If the child has not engaged in substantial gainful activity, the ALJ must next determine whether the child has a severe, medically determinable impairment – an impairment which causes more than minimal functional limitations.  20 C.F.R. § 416.924(c).  If the child has a severe, medically-determinable impairment, the ALJ must then determine whether the impairment or combination of impairments meets, medically equals, or functionally equals any of the "listed" impairments.  20 C.F.R. § 416.924(d).[1]

In determining whether a child's impairment functionally equals a listed impairment, an ALJ must consider how the child functions in each of six "domains."  "Domains" are defined as "broad areas of functioning intended to capture all of what a child can or cannot do."  20 C.F.R. § 416.926a(b)(1).  The six domains pertaining to childhood disability claims are (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for one's self,

---

[1]A "listed impairment" is one that would entitle an adult to disability benefits without further consideration.  The listings of impairments may be found at  20 C.F.R. Pt. 404, Subpt. P, App. 1.

and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1)(i)-(vi).  A child's

impairments are deemed to be the functional equivalent of a listed impairment if the child's

impairments cause extreme functional limitations in one domain or marked functional

limitations in two or more domains.  20 C.F.R. § 416.926a(d).

> Agency regulations define "marked limitations" as follows:
>
> We will find that you have a "marked" limitation in a domain when your
> impairment(s) interferes seriously with your ability to independently initiate,
> sustain, or complete activities.  Your day-to-day functioning may be seriously
> limited when your impairment(s) limits only one activity or when the
> interactive and cumulative effects of your impairment(s) limit several
> activities.  "Marked" limitation also means a limitation that is "more than
> moderate" but "less than extreme."  It is the equivalent of the functioning we
> would expect to find on standardized testing with scores that are at least two,
> but less than three, standard deviations below the mean.

20 C.F.R. § 416.926a(e)(2)(i).  A standardized test score that is three or more standard

deviations below the mean is the equivalent of functioning consistent with an "extreme"

limitation.  *See* 20 C.F.R. § 416.926a(e)(3).

Although the Commissioner will not rely on standardized test scores alone to

determine that a child is or is not disabled, *see* 20 C.F.R. § 416.926a(e)(4)(i), standardized

tests are useful in determining the extent to which a child's impairments affect his or her

functionality.

## III.   The ALJ's Disability Determination

The ALJ followed the sequential evaluation process required by 20 C.F.R.

§ 416.924(b)-(d).  The ALJ first determined that S.H.S. has never engaged in substantial

gainful activity.  AR 24, 27.  The ALJ found that S.H.S. suffers from oppositional defiant

3

disorder (ODD), attention deficit hyperactivity disorder (ADHD), and headaches, and that the combined effects of these impairment impose more than slight abnormalities and limitations on S.H.S. and therefore are severe within the meaning of the Social Security Act. AR 24, 27.  The ALJ next found that S.H.S.'s serious impairments do not meet or medically equal the criteria of listed impairments at 20 C.F.R. Pt. 404, Subpt. P, App. 1.  AR 25, 27. The ALJ then considered whether S.H.S.'s impairments functionally equal any of the listed impairments.  *See* 20 C.F.R. § 416.926a.  The ALJ considered S.H.S.'s ability to function in each of the six domains and determined that S.H.S. has less than marked limitations in each domain.  AR 26-27.  Based on these findings, the ALJ determined that S.H.S. is not entitled to childhood disability benefits.  AR 26-27.

**IV.    Claims Raised on Appeal**

Ms. Santiago contends that the ALJ committed reversible error by failing to consider her testimony and the testimony of S.H.S. regarding his symptoms and functioning and by failing to make any credibility determinations.  She further contends that the ALJ erred in failing to explain his finding that S.H.S.'s impairments did not meet or equal a listing. Finally, she contends that the ALJ did not use the correct legal standards in arriving at his functional equivalence findings and that those findings are not based on substantial evidence.

**V.    Standard of Review**

Because the Appeals Council denied review, the ALJ's decision is the Commissioner's final decision.  *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). Judicial review of the Commissioner's final decision is limited to determining whether the

factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). "[S]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal*, 331 F.3d at 760 (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). A court must consider whether specific rules of law were followed in weighing particular types of evidence in disability cases, but the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Hackett*, 395 F.3d at 1172.

When a child claimant is unable to adequately describe his symptoms, the Agency "will accept as a statement of . . . symptoms the description given by the person who is most familiar with [the claimant], such as a parent, other relative or guardian." 20 C.F.R. § 416.928(a).

## VI.   <u>Analysis</u>

### A.   <u>Failure to Consider Testimony of Ms. Santiago and S.H.S. and Failure to Make Credibility Findings.</u>

In this case, both S.H.S. and Ms. Santiago testified at the administrative hearing. S.H.S. testified that he sometimes has trouble controlling his anger and sometimes is sent out of a classroom. He also testified that he sometimes asks to leave a classroom to avoid a "burst in class." AR 286. S.H.S. testified that he had been sent to the office or counselor for

disciplinary problems many times and that he had just returned to school after a protracted suspension.  AR 285, 287.  Significantly, S.H.S. could not remember many of the incidents about which he was questioned.  He did remember, and did testify, that prescription medications he had taken in the past made him fall asleep in class and lose weight.  AR 289.

Ms. Santiago testified more extensively about her son's symptoms.  She stated that medicines prescribed for his ADHD either caused him to fall asleep or lose his appetite.  She testified that S.H.S. had been suspended for the past three months because school officials could not control him.  AR 280.  She further stated that S.H.S. had threatened a teacher and been involved in fights at school.  AR 283.  She described how S.H.S. could not complete a task because his mind would wander.  AR 281.  Ms. Santiago also testified that S.H.S. has difficulty academically in school and that his grades are "not good at all."  AR 282. According to Ms. Santiago, S.H.S. often becomes angry and frustrated when he tries to accomplish a task.  AR 283.  S.H.S. had also been placed in several different foster homes during the year.  AR 283-284.

The ALJ discussed much of the objective evidence regarding evaluation, treatment, and symptoms of S.H.S.'s severe impairments.  He did not, however, discuss the testimony of either Ms. Santiago or S.H.S., and he also did not make any credibility determinations with respect to their testimony.

Although an ALJ need not discuss every piece of evidence in the administrative record, he "must discuss uncontroverted evidence he chooses not to rely upon as well as significantly probative evidence he rejects."  *See Clifton v. Chater*, 79 F.3d 1007, 1009-10

6

(10th Cir. 1996) (citations omitted).  Generally, an ALJ must consider all testimony and make specific written findings as to the credibility of the witnesses.  The Tenth Circuit Court of Appeals has held that "the ALJ is not required to make specific written findings of credibility only if the written decision reflects that the ALJ considered the testimony."  *Blea v. Barnhart*,  466 F.3d 903, 915 (10th Cir. 2006) (internal quotations and citation omitted).  In this case, the written decision of the ALJ does not reflect consideration of any hearing testimony.  Moreover, when a parent testifies on behalf of a child claimant who, as in this case, cannot adequately describe his functional symptoms "the ALJ must make specific findings concerning the credibility of the parent's testimony, just as he would if the child were testifying."  *Briggs ex rel. Briggs v. Massanari*,  248 F.3d 1235, 1239 (10th Cir. 2001) (*citing Williams v. Bowen*, 859 F.2d 255, 260-61 (2d Cir. 1988) ("The failure to make credibility findings regarding the [mother's] critical testimony fatally undermines the Secretary's argument that there is substantial evidence adequate to support his conclusion that claimant is not under a disability.").  On remand, the Commissioner should consider and discuss the testimony of any witnesses who testify.  He should also evaluate the credibility of each witness and include a credibility analysis for each in his written decision.

## B.   Failure to Explain Why S.H.S.'s Impairments Do Not Meet or Equal a Listing

The second issue centers on whether the ALJ erred as a matter of law in failing to properly discuss his finding that S.H.S.'s severe impairment does not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix

1, particularly the listing for ADHD at § 112.11.  Here, having found that S.H.S. suffers from

ADHD and ODD and that these conditions are severe, the ALJ stated only his conclusion that

"these impairments do not meet or medically equal the level of severity of any impairment

found in . . . [the listings of impairments]."  AR 25.

The regulations detail the criteria a claimant must prove to meet the ADHD listing:

112.11 Attention Deficit Hyperactivity Disorder: Manifested by developmentally inappropriate degrees of inattention, impulsiveness, and hyperactivity.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied.

A. Medically documented findings of all three of the following:

1. Marked inattention; and

2. Marked impulsiveness; and

3. Marked hyperactivity;

And

B. ... for children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraph B2 of 112.02.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.11.  The "appropriate age-group criteria" in

paragraph B(2) of § 112.02 are as follows:

a. Marked impairment in age-appropriate cognitive/communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests. . .; or

b. Marked impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or

c. Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, appropriate standardized tests; or

d. Marked difficulties in maintaining concentration, persistence, or pace.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.02(B)(2).

If a claimant demonstrates that he or she has not engaged in substantial gainful activity and that he or she has a severe impairment, the Commissioner must then provide the claimant with "a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based." 42 U.S.C. 405(b)(1). The Tenth Circuit has specifically held that this statute requires an ALJ "to discuss the evidence and explain why he found that appellant was not disabled at step three." *Clifton v. Chater* 79 F.3d at 1009 (internal citations omitted).

In this case, the ALJ found at step two of the sequential evaluation that S.H.S.'s condition, ADHD, is a severe impairment. This finding is well-supported by evidence in the administrative record including school notes, testing results,  and medical records. The Special Services Center of the Lawton Public Schools prepared a Psychoeducational

Evaluation of S.H.S. on October 24, 2001.  AR 199-205.[2]  Testing of S.H.S's academic

achievements generally fell in the low-average to low range.  His skills in "Broad Written

Language," however, fell into the first percentile, characterized as a "very low" score.  AR

202.  His "Basic Writing Skills" score fell into the third percentile which was described as

the "low" range of scores.  AR 202-203.  The report states that one of  S.H.S.'s weaknesses

is "comprehension-knowledge."  AR 203.  The examiner reported having to re-direct S.H.S.

"to focus on the task at hand" during the testing.  AR 200.  The examiner also reported that

S.H.S. had difficulty with attention and concentration as well as short-term memory, in

addition to his academic weaknesses.  AR 203.

Dr. Robert Tobias, M.D., who examined S.H.S. on April 12, 2004, diagnosed S.H.S.

with ADHD, *see* AR 225-226, as did a Health Service Psychologist on February 14, 2006.

AR 246-249.  Such a diagnosis necessarily includes a finding that the patient exhibits

inattentiveness, impulsivity and hyperactivity.[3]  Moreover, Dr. Sally Varghese, M.D., found

---

[2]The ADHD listing specifically states that "medical findings" in this context includes "consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available" and "if necessary, the results of appropriate standardized psychological tests."  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.02(B)(2).

[3]The characteristic features of ADHD are inattention, impulsive behavior and motor hyperactivity.  *See* "Attention-Deficit Hyperactivity Disorder (ADHD) Signs and Symptoms, http://www.mentalhealthchannel.net/adhd/symptoms.shtml.  By diagnosing S.H.S. with ADHD, Dr. Tobias implicitly acknowledged that S.H.S. exhibits the three symptoms included in the "A" criteria of the ADHD listing.  Dr. Tobias did not state whether S.H.S.'s symptoms are "marked."  On remand, the Commissioner may need to develop the record by obtaining clarification from Dr. Tobias or evidence from another consultative medical examiner to determine whether S.H.S.'s symptoms are "marked."  Because a social security disability hearing is nonadversarial, the ALJ
(continued...)

that S.H.S. has marked difficulty in attending and completing tasks.  Her handwritten notes

describe S.H.S. as "impulsive, has poor attention span, disruptive problems. Sev. office visits

for behavior problems."  AR 229.  Dr. Varghese ultimately concluded that S.H.S.'s severe

ADHD does not meet or medically equal a listed impairment.[4]  Nevertheless, the findings of

these medical and educational sources should have been considered and discussed by the ALJ

in conjunction with his step three determination that S.H.S.'s severe impairment does not

result in symptoms which meet or equal the ADHD listing.  On remand, the Commissioner

should consider and discuss the relevant listing in light of the evidence in the record.

### C.    The ALJ's Functional Equivalency Findings

The third issue challenges the legal and factual underpinnings of the ALJ's functional

equivalency findings.  This issue centers on the contention that the ALJ failed to apply the

required four-step test in determining whether S.H.S.'s refusal to take medication was

justified.   Without making this preliminary determination, the ALJ rejected Dr. Sally

---

[3](...continued)
bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised."  *Henrie v. United States Department of Health & Human Services*, 13 F.3d 359, 360-61 (10th Cir. 1993).  "It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits[.]"  *Sims v. Apfel*,  530 U.S. 103, 111 (2000) (internal citation omitted).  *See also*  20 C.F.R. § 416.912(f) ("If the information we need is not readily available from the records of your medical treatment source, or we are unable to seek clarification from your medical source, we will ask you to attend one or more consultative examinations at our expense.").

[4]The failure of the ALJ to consider the testimony and determine the credibility of Ms. Santiago is particularly troubling given that an ALJ may consider testimony of a parent or other individual familiar with the child-claimant in determining whether the child's symptoms meet the "B" criteria in the listing for ADHD.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.02(B)(2), *supra* at 9.

Varghese's opinion that S.H.S. has a marked limitation in his ability to attend and complete a task.

The Tenth Circuit has identified four requirements that must be met before a claimant's failure to undertake treatment will preclude the recovery of disability benefits: (1) the treatment should be expected to restore the claimant's ability to work; (2) the treatment must have been prescribed; (3) the treatment must have been refused; and (4) the refusal must have been without justifiable excuse. *See Pacheco v. Sullivan*, 931 F.2d 695, 697-698 (10th Cir. 1991). *See also* 20 C.F.R. § 416.930.

In this case, the ALJ stated that the "claimant's limitations in this area [of attending and completing tasks] have been described by Sally Varghese, M.D., as marked, however [sic] it should be noted that he has refused to take any medications." AR 26. The ALJ did not consider the requirements listed above before relying on S.H.S.'s refusal to take medication as the basis for rejecting Dr. Varghese's opinion.[5] Both S.H.S. and Ms. Santiago testified, however, that both of the two medications previously prescribed to mitigate the

_____

[5]The Commissioner argues that the ALJ's error in failing to adequately analyze S.H.S.'s refusal to take prescribed medications should be considered harmless because Dr. Varghese found only one "marked" impairment in the "B" criteria of the listing. This Court expresses no opinion as to the ultimate outcome of the Commissioner's decision as to whether S.H.S.'s severe impairments are disabling. Nevertheless, the Commissioner's failure to analyze the evidence under the rules set forth by the Agency, combined with his failure to properly consider the testimonial evidence and to make credibility findings, casts doubt on the outcome of the proceedings. This Court cannot, therefore, state with certainty that the ALJ's failure to apply the proper legal analysis in considering S.H.S.'s refusal to take prescribed medications was a harmless error. *See Hackett v. Barnhart*, 475 F.3d 1166, 1175 (10th Cir. 2007) (harmless error may be appropriate in an exceptional circumstance where, for example, based on material the ALJ did at least consider (just not properly), the Court could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way).

symptoms caused by ADHD had side effects.  One medication caused S.H.S. to fall asleep in class and the other resulted in weight loss.  AR 280, 289.  The ALJ should have considered whether the side effects of the medication constitute "justifiable excuse" for S.H.S.'s refusal to take medication.  On remand, the ALJ should use the appropriate legal framework in analyzing S.H.S.'s refusal to take prescription medication.

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636.  Any such objections must be filed with the Clerk of the District Court by July   21st  , 2008.  *See* LCvR72.1.  The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this __30th__ day of June, 2008.

VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE